UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CRAIG A. PATTINGTON,

                            Plaintiff,

v.                                                                         5:16-CV-0670
                                                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

BINDER, BINDER LAW FIRM                CHARLES E. BINDER, ESQ.
  Counsel for Plaintiff
485 Madison Ave., Ste. 501
New York, NY 10022

U.S. SOCIAL SECURITY ADMIN.           DAVID BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 11, 13.).

      Currently before the Court, in this Social Security action filed by Craig A. Pattington ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 8, 9.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I. RELEVANT BACKGROUND

A. Factual Background

Plaintiff was born in 1985. (T. 78.) He completed high school. (T. 224.) Generally, Plaintiff's alleged disability consists of chronic back pain and depression. (T. 223.) His alleged disability onset date is September 11, 2013. (T. 223.) His date last insured is December 31, 2017. (T. 78.) He previously worked in the auto parts industry and bakery industry. (T. 224.)

B. Procedural History

On April 18, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 78.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 24, 2014 Plaintiff appeared before the ALJ, Robert E. Gale. (T. 40-77.) On March 16, 2015, ALJ Gale issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-29.) On April 15, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-23.) First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2018[1] and Plaintiff had not engaged in substantial gainful activity since September 11, 2012. (T. 12.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical, lumbar, and thoracic spine, and a depressive disorder. (T. 13.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13-16.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (T. 16.)[2] Specifically, the ALJ found that Plaintiff could:

> lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand for up to two hours total in an eight-hour workday and for up to thirty minutes at one time, walk for up to two hours total in an eight-hour workday and for up to thirty minutes at one time, and sit for a total of six hours in an eight-hour workday and for up to forty-five minutes at one time. Although [Plaintiff] is unable to climb ladders, ropes, and scaffolds, he is able to rarely crawl and occasionally stoop, kneel, and crouch. [Plaintiff] is able to understand, remember, and follow simple one or two-step instructions, but he is only able to occasionally understand, remember, and follow detailed and complex instructions. [Plaintiff] is able to maintain attention and concertation for simple tasks, and he is able to complete a normal workday and workweek without interruption.

(T. 16.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 21-23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as December 31, 2017. (T. 78.)

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

3

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly weigh the medical opinion evidence. (Dkt. No. 8 at 16-21 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (*Id.* at 21-23.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ did not err in evaluating the opinion evidence. (Dkt. No. 9 at 4-11 [Def.'s Mem. of Law].) Second, Defendant argues Plaintiff has not shown that the ALJ erred in evaluating Plaintiff's credibility. (*Id.* at 11-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's Weighing of the Medical Opinion Evidence

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[3]; *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is

---

[3] Effective March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 have been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Here, two of Plaintiff's treating sources provided medical source statements outlining Plaintiff's functional limitations. Richard DiStefano, M.D., with Syracuse Orthopedic Specialists, completed a statement on September 19, 2014. (T. 648-653.) Plaintiff's general practitioner, Jeffrey LeGrett, M.D., completed a statement on December 3, 2013. (T. 463-467.) Dr. LeGrett completed a second, undated, medical source statement; however, it appears to be from August of 2014. (T. 751-755.) The record also contained a medical source statement from consultative examiner Kalyani Ganesh, M.D., dated June 20, 2013. (T. 445-448.)

In assessing the medical opinion evidence in the record the ALJ afforded "very little weight" to the opinion of Dr. DiStefano. (T. 19.) The ALJ reasoned that the "check-box" opinions were inconsistent with the overall evidence, including the doctor's own clinical findings, Plaintiff's activities of daily living, and the opinion of Dr. Ganesh. (*Id.*) The ALJ noted that Dr. DiStefano treated Plaintiff "only" four times, his opinions were not supported by a detailed explanation, and Dr. DiStefano's form indicated negative objective findings, such as straight leg raises and muscle weakness. (T. 19-20.) The ALJ further stated that Dr. DiStefano's treatment notations contained normal objective findings. (T. 20.)

The ALJ afforded Dr. LeGrett's opinions "very little weight." (T. 20.) The ALJ reasoned that Dr. LeGrett's opinions were inconsistent with each other and the overall

7

evidence, including his own treatment notations, Plaintiff's activities of daily living, and the opinion of Dr. Ganesh. (*Id.*) The ALJ stated that Dr. LaGrett's April 2012 report contained no function-by-function assessment. (*Id.*) The ALJ also cited specific inconsistencies in Dr. LeGrett's two statements. (*Id.*)

The ALJ afforded Dr. Ganesh's opinion "very significant weight." (T. 19.) The ALJ reasoned that Dr. Ganesh was a "programmatic expert[]," her opinion was consistent with her examination, and her opinion was relatively consistent with the longitudinal medical evidence in the record. (*Id.*)

Plaintiff first argues that the ALJ erred by making a "conclusory finding" that the opinion of the treating physicians were unsupported by appropriate medical findings. (Dkt. No. 8 at 17 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit. The ALJ, as outlined above, provided a detailed and thorough analysis of the medical opinion evidence in the record. The ALJ outlined the objective medical evidence in the record, as well as, the medical source statements. (T. 18-20.) The ALJ provided specific examples in the record which he relied on in making his weight determination. (T. 19-20.)

Although Plaintiff argues that objective findings in the record, such as MRIs and CT scans, support the treating source opinions, it is not enough for Plaintiff to merely disagree with the weight an ALJ afforded an opinion or cite evidence which could support Plaintiff's contention. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones*

8

*v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Plaintiff next argues that the ALJ committed legal error in concluding that the opinions of the treating sources were inconsistent with Plaintiff's activities of daily living. (Dkt. No. 8 at 18-19 [Pl.'s Mem. of Law].) Any error here would be harmless. The ALJ did not solely rely on Plaintiff's activities of daily living in weighing the treating source opinion evidence. Here, the ALJ relied on Plaintiff's activities of daily living as additional support in his weight determination. *See Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (the Court found that the ALJ had properly pointed to substantial evidence for giving the treating source narrative statement only probative weight, noting that the restrictive assessment was inconsistent with the source's own treatment notes, the conclusion of other medical sources, and Plaintiff's testimony regarding her daily functioning); *see Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (ALJ properly took into consideration plaintiff's activities of daily living in assessing treating source opinions).

Plaintiff argues that the ALJ erred in affording more weight to the one time examining consultative examiner's opinion over the opinions of Plaintiff's treating sources. (Dkt. No. 8 at 19-21 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c),

404.1527(e); *see Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016).

Plaintiff contends that reliance on Dr. Ganesh's opinion was "particularly misplaced" because the doctor did not have any of Plaintiff's treatment records or objective imaging. (Dkt. No. 8 at 19 [Pl.'s Mem. of Law].) While medical source opinions that are "conclusory, stale, and based on an incomplete medical record" may not be substantial evidence to support an ALJ finding, *Griffith v. Astrue,* No. 08-CV-6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. March 31, 2009), this is not true where such opinions are supported by substantially similar findings in treatment notes and other opinions in the record, *Camille v. Colvin,* 104 F.Supp.3d 329, 343-344, (W.D.N.Y. May 19, 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). Also, Dr. Ganesh ordered and reviewed an X-ray of Plaintiff's spine which she took into consideration in formulating

her opinion. (T. 449.) Therefore, the ALJ did not err in his reliance on Dr. Ganesh's opinion.

Of note, Plaintiff does not contend that the ALJ's RFC determination was not supported by substantial evidence. Plaintiff only argues that the ALJ committed legal error in weighing of the medical opinion evidence in the record.

For the reasons stated herein, and further outlined in Defendant's brief, the ALJ properly weighed the medical opinion evidence in the record. The ALJ thoroughly outlined the medical evidence and medical opinions in the record, and he provided concrete and adequate reasoning for affording the opinions weight. Although deference is usually given to the opinions of the treating source, the ALJ did not err in affording weight to the consultative examiner's opinion where the ALJ determined the opinion was more consistent with the longitudinal medical record.

### B. ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not fully credible. (T. 17.) In making his credibility determination the ALJ relied on objective medical evidence in the record, treatment notations, Plaintiff's conservative treatment modalities, and his good work history. (T. 17-18.) The ALJ also outlined

Plaintiff's testimony regarding his daily activities, his limitations, and his medications. (T. 18.)

Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence, the ALJ erred in relying on Plaintiff's "conservative treatment," and the ALJ failed to explain his rationale. (Dkt. No. 8 at 21-23 [Pl.'s Mem. of Law].)

Here, the ALJ's credibility assessment was supported by substantial evidence. First, the ALJ did not err in relying on Plaintiff's activities of daily living in assessing his credibility. The ALJ did not conclude that Plaintiff's daily activities, or medical advice to be more aerobically active, equated with the ability to work. The ALJ properly evaluated Plaintiff's testimony regarding the limiting nature of his symptoms to the extent that it was inconsistent with other evidence in the record. *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.").

Regarding Plaintiff's "conservative" treatment, the ALJ outlined medical evidence showing Plaintiff received medication, a TENS unit, physical therapy, and specialist treatment. (T. 18.) Plaintiff contends the ALJ's classification of Plaintiff's treatment as "conservative" was misleading and the ALJ overlooked notations that Plaintiff "may" require surgery, but could not afford the required "work-up." (Dkt. No. 8 at 22-23 [Pl.'s Mem. of Law].) Here, the ALJ properly outlined Plaintiff's treatment as indicated in the record. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). A plaintiff may be deemed

13

less credible "if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996); *accord, Sickles v. Colvin,* 12-CV-0774, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014) (finding that the ALJ properly cited Plaintiff's conservative treatment as a reason for discounting Plaintiff's credibility); *see also Phelps v. Comm'r of Soc. Sec.*, No. 1:15-CV-0499, 2-16 WL 3661405, at *8 (N.D.N.Y. July 5, 2016) (ALJ did not err in taking into consideration plaintiff's conservative treatment, such as medication management, ER visits, and treatment by specialists, in making a credibility determination). Further, while the ALJ noted Plaintiff's treatment, the ALJ did not base his credibility assessment on that one factor alone. As stated herein, the ALJ articulated evidence in the record to support his determination that Plaintiff's allegations of pain due to his symptoms were not as limited as alleged. (T. 17-18.)

Finally, Plaintiff contends that the ALJ failed to explain how some normal examinations were more relevant than "extensive abnormalities" relied on by the treating sources. (Dkt. No. 8 at 23 [Pl.'s Mem. of Law].) First, Plaintiff does not identify these "extensive abnormalities." (*Id.*) Further, as stated herein, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ's credibility assessment was proper and supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 17, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge